## Robert Schengel et al., Defendants in Error, v. United States Brewing Company, Plaintiff in Error.

### Gen. No. 16,196.

LANDLORD AND TENANT—*when latter cannot cancel.* If the right to cancel a lease is reserved if a saloon license cannot be obtained or is revoked, such right cannot be exercised for failure to obtain a license, if no *bona fide* effort was made to that end.

Error to the Municipal Court of Chicago; the HON. HOSEA W. WELLS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1910. Affirmed. Opinion filed December 22, 1911.

WINSTON, PAYNE, STRAWN & SHAW, for plaintiff in in error; GARRARD B. WINSTON, of counsel.

KRUSE & PEDEN and ROY C. MERRICK, for defendants in error.

MR. JUSTICE CLARK delivered the opinion of the court.

Suit was brought for rent claimed to be due on a written lease made by the parties hereto. The 7th clause of the lease is as follows:

"7th. It is mutually covenanted and agreed, by and between the parties hereto, that this lease is made upon the express condition and consideration that if the City of Chicago license to conduct a saloon business in said premises, at any time during the said term, is not granted or if granted shall, at any time during said term, be revoked, then and in such case said lessee shall have the right to terminate this lease by giving thirty days notice in writing of its intention so to do, and upon the exercise of said option said lease shall become null and void."

The defense is that no license to conduct a saloon business was or could be obtained, and that thereupon the Brewing Company gave the thirty days' notice re-

quired by this paragraph of the lease and thereby revoked it.

At the trial it was agreed that the lease had been executed; that on the first day of May the defendant below gave notice, which was received by the plaintiffs; that the defendant vacated the premises on or about the first day of June, and that no rent was paid from that time to the beginning of the suit; that if the plaintiffs were entitled to anything they were entitled to ten months' rent at $50 per month.

The ordinance of the Town of Hyde Park also was considered in evidence, and provides ''that any person who shall desire to obtain a license to keep a saloon shall present his application in writing, which application shall be signed by a majority of the property owners, according to the frontage on both sides of the street in the block in which such dram-shop is to be kept, and shall be signed by a majority of the bona fide householders and persons or firms living in, or doing business on each side of the street in the block upon which such dram-shop shall have its main entrance.''

The testimony of three witnesses was introduced in the court below in an effort to establish the fact that plaintiff in error had made a *bona fide* attempt to obtain a license. No application for a license was offered in evidence. A statement as to this matter made by counsel for the Brewing Company was accepted as being correct. That statement was to the effect that at the trial of another case in which the same issues were involved before another judge, the application for a license and the petition for the signatures that were endorsed thereon were offered in evidence and taken by that judge and retained in his files until after the decision of the case; that the attorney for the defendant in that case endeavored to obtain the exhibit from such judge, but it had been mislaid and the attorney was unable to obtain the same;

that counsel did not know where the application or the petition then was or whether it was in existence or not; that he had not seen it since it was in the possession of the judge referred to. Nothing that purported to be a copy of the application was offered in evidence, but the Brewing Company contented itself with introducing the testimony of three witnesses by whom it was shown that there were twenty-seven houses on the two sides of the street in the block where the proposed saloon was to be established, and that these three men at different times called at all of these houses, and on several occasions sought to get signatures to the petition, but were unable to get more than six or seven. In some instances the canvasser was told that the person to whom he applied was the owner of the house and also the householder occupying the same. In other instances he was unable to say whether it was the owner or householder whom he saw. No effort was made to prove that the owners of all the property were seen. For the purposes of this case perhaps this was not necessary to be shown, because if a majority of the *bona fide* householders and persons or firms living in or doing business on each side of the street in the block in which the dram-shop was to have had its main entrance did not sign the petition it would be useless to obtain the signatures of the owners of the property.

The case was tried before the court and a jury and a verdict rendered in favor of the defendants in error for the sum of $435, the deduction of $65 evidently having been made because of the testimony of the defendant in error, Robert Schengel, from which it might appear that the defendants in error obtained $65 from renting a portion of the premises to others during part of the ten months' period.

We are asked to reverse the judgment and enter a judgment here, on the ground that there was no evidenc tending to sustain it. In the argument of plaintiff in error it is said: "The only question left for

the jury to determine in this case was whether the brewing company had made a *bona fide* effort to obtain a license." We infer from this that its position is that by the testimony of the three witnesses heretofore referred to it did prove a *bona fide* effort to obtain a license. It is true that the testimony of these three witnesses tended to show that they had endeavored to get the necessary signatures from the householders and property owners whose signatures were required, and had failed to do so.

The court charged the jury orally upon the questions involved in the case, and no complaint thereof is made in the briefs.

We do not think the testimony of the witnesses for the plaintiff in error of such a character as would enable us to say that, as a matter of law, a *bona fide* attempt to obtain a license was made. On their cross-examination they confessed themselves unable to give the names either of the property owners or the householders, etc., whose signatures were necessary in order to make the application effectual. As heretofore stated, the application itself was not offered, nor was a copy of it, and the witnesses did not state who the applicant for the license was. In our opinion the case was properly submitted to the jury on the question as to the *bona fides* of the effort of the plaintiff in error to obtain a license. The judgment will therefore be affirmed.

*Judgment affirmed.*